IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GENE BUENTELLO, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-1341 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Gene Buentello, a state inmate proceeding *pro se*, seeks habeas relief under 28

U.S.C. § 2254 challenging his state felony conviction.  Respondent filed a motion for

summary judgment (Docket Entry No. 9), to which petitioner responded (Docket Entry No.

10).

Based on consideration of the pleadings, the motion and response, the record, and the

applicable law, the Court will **GRANT** summary judgment and **DISMISS** this case.

## I.  PROCEDURAL BACKGROUND

Petitioner pleaded guilty to two counts of delivery of a controlled substance and one

count of retaliation under cause numbers 03-12-09046-CR, 04-01-00454-CR, and 05-01-

00505-CR in the 221st District Court of Montgomery County, Texas.  The trial court

sentenced petitioner to seven years incarceration pursuant to a plea bargain agreement.  No

direct appeal was taken.  The Texas Court of Criminal Appeals denied petitioner's

applications for state habeas relief without a written order on findings of the trial court without a hearing. *Ex parte Buentello*, Application Nos. 65,313-02, -03, and -04.[1]

Petitioner raises the following grounds for federal habeas relief:

(1)    ineffective assistance of trial counsel;

(2)    an involuntary guilty plea; and

(3)    actual innocence.

Respondent argues that petitioner's grounds fail as a matter of law, and that not all of petitioner's grounds were raised in state court. As none of petitioner's grounds has merit, all of his arguments will be addressed without regard to exhaustion.

## II.   THE APPLICABLE LEGAL STANDARDS

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state court adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies

---

[1]The documents referenced within this Memorandum Opinion and Order appear at multiple locations throughout the state court record. For simplicity and continuity, state court record references will be to *Buentello*, No. 65,313-03 (Supplemental Clerk's Record, 8/24/06), unless otherwise stated .

a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

## III.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996).  To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).  However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the

judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

In the context of a guilty plea, a petitioner must prove not only that his attorney actually erred, but also that he would not have pleaded guilty but for the error. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). Under the first prong of this test, if a petitioner was represented by counsel during the plea process and entered his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). To meet the second prong, a petitioner must establish that, but for his counsel's allegedly erroneous advice, he would not have pleaded guilty but would have insisted on going to trial. *Id.* at 59; *Armstead,* 37 F.3d at 206. Once a valid guilty plea has been entered, all non-jurisdictional defects in the proceedings are waived. This waiver includes all claims of ineffective assistance of counsel except insofar as the alleged

ineffectiveness relates to the giving of the guilty plea. *Reeves v. Pettcox,* 19 F.3d 1060, 1062 (5th Cir. 1994).

Petitioner raises the following instances of ineffective assistance of counsel:

(1)   failure to investigate or move for a speedy trial;

(2)   failure to pursue pretrial discovery motions; and

(3)   failure to subpoena favorable defense witnesses.

The record reflects that as part of his guilty plea, petitioner executed a "Statements and Waivers of Defendant" form, in which he acknowledged in open court that, "I am mentally competent and I understand the nature of the charge against me;" "I fully understand the consequences of my plea of guilty/nolo contendere, and after having fully consulted with my attorney, request that the trial court accept said plea;" "I have freely, knowingly, and voluntarily executed this statement in open court with the consent and approval of my attorney;" and, "If my counsel was appointed, I waive and give up any time provided me by law to prepare for trial.  I am totally satisfied with the representation provided by my counsel and I received effective and competent representation." *Buentello,* p. 58.[2]  These solemn declarations in open court carry a strong presumption of truth, forming a formidable barrier in the instant collateral proceeding. *See United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998).

---

[2]These same written stipulations, statements, and waivers were executed for all three criminal charges and convictions under their respective case numbers.

Each of petitioner's instances of alleged ineffective assistance is discussed separately, below.

A.    Failure to investigate or move for a speedy trial

Petitioner complains that trial counsel was ineffective in failing to investigate or move for a speedy trial in the two delivery of a controlled substance cases. Petitioner contends that had counsel investigated the issue and moved to dismiss the two indictments for violation of his speedy trial rights, trial court would have granted the motion.

In compliance with the state habeas court's order, trial counsel filed an affidavit testifying to the following relevant facts:

> 'Why did he (counsel) not assert a violation of Applicant's right to a speedy trial on the two delivery of a controlled substance charges?'
>
> In my judgment, Applicant's situation did not pass muster under the *Barker v. Wingo*, 407 U.S. 514, 530 (1972) test, i.e., (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) the prejudice to the defendant resulting from the delay. *Meshell v. State*, 739 S.W.2d 246, 255 (Tex. Crim. App. 1987), much to Judge Teague's distress, held unconstitutional the Texas statutory speedy trial act in the [C]ode of Criminal Procedure, and the Texas constitutional right to a speedy trial is construed in the same manner as set out in *Barker, id.*
>
> Length of delay: *Harris v. State*, 827 S.W.2d 949 (Tex. Crim. App. 1992)[,] suggests that generally any delay of eight months or longer is presumptively unreasonable and triggers a speedy trial analysis. Applicant's first case was indicted during December of 2003; his second during January of 2004. The third was returned in January of 2005. While the delay seems a bit long on its face, the delay apparently resulted [from] the backlog of cases in the 221st District Court and Applicant's liberty on bail, plus the alleged continued course of criminal conduct. Furthermore, this county does not have a criminal laboratory, and all controlled substances must be sent to out-of-county laboratories for testing since the State must allege and prove the nature of the

alleged controlled substance at trial. Sixty days is not an uncommon period of time to await laboratory analysis report[s] for this jurisdiction. Applicant had appointed counsel other than the undersigned. When I was appointed to substitute for my predecessor, the three cases were at the top of the list to go to trial. Frankly, I was concerned that I would be put to trial before having time to get an adequate 'handle' on the cases. The history of cases under *Barker*, *id.*, indicates that delays as long as six years are not, per se, sufficient to trigger a dismissal. This factor is presumptively in [A]pplicant's favor. But the other factors must be considered.

The reason for the delay: Trial backlog is generally sufficient in and of itself to avoid dismissal due to denial of speedy trial. When I was appointed, the cases were near or at the top of the trial docket. They were set for trial. Given the procedures in the 221st District Court, i.e., generally one criminal trial per month since the court is one of general jurisdiction, not a dedicated criminal court, the delay between the second indictment and the third is not unusual for felony cases in that court. The third indictment had the effect of 'resetting' the entire process. The new case was arraigned, and all three put on the trial docket with a trial date of July 24, 2005. This factor weighs against Applicant.

The defendant's assertion of the right to a speedy trial: As best as I recall, Applicant signed resets on each occasion when he was due in court. I recall no annotations on any such document that Applicant demanded a speedy trial. This factor is not in [A]pplicant's favor.

The prejudice to the defendant resulting from the delay: The cases generally speak to factors beyond mere anxiety about results. Some actual prejudice is usually required. I know of no such prejudice in this case even alleged. The fourth factor weighs against Applicant.

In sum, the balance of *Barker* is against Applicant, and the law does not require a useless thing. Filing a motion to dismiss for want of speedy trial would have been a useless thing.

*Buentello*, pp. 27-28.

In denying habeas relief, the state court made the following relevant findings:

10.    [Trial counsel] Mr. Rennenberg has submitted a credible affidavit in answer to Applicant's claims of deficient performance.

11.    Based on Mr. Rennenberg's credible affidavit, counsel understood that the delay in Applicant's prosecution stemmed from Applicant's liberty on bail, the continued course of criminal conduct at issue, and the backlog of cases in the 221st District Court.

12.    Based on Mr. Rennenberg's credible affidavit, Applicant's three cases were at the top of the trial docket at the time trial counsel was appointed to the case, and counsel was concerned about having sufficient time to prepare for the cases.

13.    Based on Mr. Rennenberg's credible affidavit, 'Applicant signed resets on each occasion when he was due in court' without any notations 'that Applicant demanded a speedy trial.'

14.    Applicant neither pleads nor offers any proof that he was prejudiced by the delay.

*Id.*, pp. 61-62 (record citations omitted).  The trial court also made the following relevant conclusions:

2.    Applicant failed to prove by a preponderance of the evidence that he was denied his right to a speedy trial.

3.    Applicant failed to prove by a preponderance of the evidence that he was denied his right to the effective assistance of counsel.

4.    Applicant failed to plead or prove by a preponderance of the evidence that but for counsel's alleged errors, he would not have pleaded guilty and he would have instead insisted on going to trial.  Absent such a showing, no relief may be granted on Applicant's ineffective assistance of counsel claim.

*Id.*, p. 64.  The Texas Court of Criminal Appeals expressly relied on these findings in denying habeas relief.

In support of these claims of ineffective assistance of counsel, petitioner argues that counsel was ineffective in "allowing petitioner to be convicted" when clearly his right to a speedy trial under state law had been violated.  *Buentello*, Application No. 65,313-02 (8/21/06), p. 17.  In support, petitioner asserts that, "the 180 days within to bring the case to trial had expired on August 5, 2004."  *Id.*  Petitioner acknowledges that the trial court appointed Rennenberg to represent him on May 24, 2005, and that he entered his guilty plea on July 27, 2005.  *Id.*, pp. 15-16.  In short, petitioner contends that had counsel moved to dismiss the charges prior to the guilty plea, the speedy trial motion would have been granted simply because of the time factor.  As prejudice for the violation, petitioner claims that the State "gain[ed] advantage when evidence became stale and witnesses disappeared." (Docket Entry No. 1, p. 7.)  No factual allegations are presented establishing "stale evidence" or that "witnesses disappeared," and petitioner's assertions of prejudice are conclusory and unsupported by the record.  Petitioner fails to show that, in light of the state court's findings, the trial court would have granted a pretrial motion to dismiss for denial of a speedy trial.  Counsel is not ineffective in failing to raise meritless motions.  *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).  Further, petitioner fails to overcome the "strong presumption of truth" afforded his judicial declarations made in open court that he was

"totally satisfied with the representation provided by my counsel and I received effective and competent representation." *See Cervantes*, 132 F.3d at 1110.

Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Petitioner fails to rebut the presumed correctness of the factual findings by clear and convincing evidence. No grounds for habeas relief are shown, and respondent is entitled to summary judgment on this issue of ineffective assistance of counsel.

B.    Failure to pursue pretrial discovery motions

Petitioner complains that trial counsel "failed to obtain rulings on critical discovery motions depriving defense of tools to present defense." (Docket Entry No. 1, p. 7.) Specifically, he complains that counsel refused to file a motion for discovery to obtain copies of the grand jury minutes, the arrest warrant affidavit statements, and the police report.

In compliance with the state habeas court's order, trial counsel filed an affidavit testifying to the following relevant facts:

> 'Whether Applicant requested that he [the lawyer] file a motion for discovery seeking the police report, the affidavit in support of the warrant for arrest, and the grand jury's minutes in the cases for delivery of a controlled substance? If so, why did counsel decline to file such a motion?'
>
> I believe that [A]pplicant wanted me to file a motion, and it may have included each of the items set out in the court's question. I am inclined to doubt that Applicant asked for each item, but let us suppose that he did.

11

The police report is not a discoverable item under Texas law.  Under the court's standard discovery order, the report is made available to counsel for examination, but no copy is required to be given to counsel, and the District Attorney routinely refuses to allow such copies to be made and given to counsel – as is his right under the law.

I read the police reports made by the arresting agency.  I was not of the opinion that any affidavit underlying the *arrest* warrant would have been of any use.  Affidavits are usually examined in *seizure* cases.  The remedy for a faulty affidavit supporting an arrest warrant is, well, nothing.  There would be no law violation that could lead [to] suppression of evidence or release from the faulty arrest, etc.  I do not believe that the affidavit would have told me anything I did not learn from reading the police reports, anyway.

Assuming that Applicant asked me to get grand [j]ury minutes. I would not have thought that the minutes would have been a source of any information of use.  Montgomery County indictments are typically obtained through a presentation, without witnesses, by an assistant district attorney. The minutes, even if filled with the testimony of the police agency personnel, would have been of no use unless the cops were reading from the wrong case file.

Filing the motion now wished for by Applicant would not have aided in the preparation of a defense in the delivery cases.  I already had the video and audiotapes of the telephone conversation and drug deals.

*Buentello*, pp. 29-30 (original emphasis).  In response to petitioner's claim that counsel

failed to investigate or obtain these documents for impeaching the informant's credibility,

counsel testified that:

'Did he [the lawyer] investigate the circumstances of the confidential informant in the delivery cases to determine whether there were any bases for discrediting him?  If so, what did counsel learn?'

Yes.  The snitch was working off a case, i.e., turning a dealer in exchange for a consideration in his own possession problems.  This is a common practice in police work, and one well known to defense counsel.  Of course he could have been cross-examined about that fact.  But his drug use did not preclude the jury from accepting his version of the drug deal.

*Id.*, p. 30.

In denying habeas relief, the state court made the following relevant findings:

9.      The Court is familiar with the effective performance of trial counsel,
        George Rennenberg, who has long practiced in the courts of
        Montgomery County and is qualified for appointment as trial counsel
        in criminal cases.

10.     Mr. Rennenberg has submitted a credible affidavit in answer to
        Applicant's claims of deficient performance.

                          *    *    *    *

16.     Based on Mr. Rennenberg's credible affidavit, the state was in a
        position to offer the following inculpatory evidence in the two delivery
        cases:

                The meetings between the snitch and Applicant
                along with a third individual were videotaped.
                The actual deliveries were done inside the garage
                at Applicant's residence and were not shown on
                the tapes. The police also had an audio recording
                of a telephone conversation between the snitch
                and Applicant setting up the deal.

17.     Based on Mr. Rennenberg's credible affidavit, trial counsel believed
        that, in light of the evidence, 'the State could have convinced a jury
        that Applicant was a party to the offense of delivery of a controlled
        substance.'

18.     Based on Mr. Rennenberg's credible affidavit, trial counsel read the
        police reports and

                was not of the opinion that any affidavit
                underlying the *arrest* warrant would have been of
                any use. . . There would be no law violation that
                could lead (to) suppression of evidence or release
                from the faulty arrest, etc. I do not believe that
                the affidavit would have told me anything I did

> not learn from reading the police reports,
> anyway.

19.   Based on Mr. Renneberg's credible affidavit, trial counsel would not
      have sought the Grand Jury minutes even if asked because
      'Montgomery County indictments are typically obtained through a
      presentation, without witnesses, by an assistant district attorney. The
      minutes, even if filled with the testimony of the police agency
      personnel, would have been of no use unless the cops were reading
      from the wrong case file.'

20.   Based on Mr. Rennenberg's credible affidavit, trial counsel was aware
      that the informant had made a deal with the State in consideration for
      his testimony, and 'he would have been cross-examined about that
      fact. But his drug use did not preclude the jury from accepting his
      version of the drug deal.'

*Id.*, pp. 61-63 (original emphasis).   The trial court also entered the following relevant

conclusions of law:

3.   Applicant failed to prove by a preponderance of the evidence that he
     was denied his right to the effective assistance of counsel.

4.   Applicant failed to plead or prove by a preponderance of the evidence
     that but for counsel's alleged errors, he would not have pleaded guilty
     and he would have instead insisted on going to trial. Absent such a
     showing, no relief may be granted on Applicant's ineffective
     assistance of counsel claim.

*Id.*, p. 64 (citations omitted).   The Court of Criminal Appeals expressly relied on these

findings in denying habeas relief.

In his state habeas application, petitioner argued that, "The grand jury's minutes,

arrest warrant affidavit's statement, and the police report were necessary to determine

probable cause and the credibility of the informant's statements . . . . This was erroneous

14

advice [to plead guilty] because ain't no way a grand jury could come up with a true bill indictment on the information the informant Charles Long's perjured statements. This is the reason why applicant requested copies of the grand jury's minutes, arrest warrant affidavit's statement, and the police report." Petitioner contends that, had counsel obtained copies of these documents, he would have been able to prove the informant unreliable and non-credible. *Buentello*, Application No. 65,313-02 (8/21/06), pp. 17-18. Further, petitioner argues that these three documents prove perjury by the informant and the lack of evidence to convict petitioner. These documents do not appear in the record before this Court.

Petitioner's claims as to the content and effect of the three documents are conclusory and fail to raise a genuine issue of material fact precluding summary judgment. Petitioner does not show that, but for counsel's failure to obtain these three documents, petitioner would have declined a guilty plea and insisted on going to trial.

Moreover, petitioner fails to overcome the "strong presumption of truth" afforded his judicial declarations made in open court that he was "totally satisfied with the representation provided by my counsel and I received effective and competent representation." *See Cervantes*, 132 F.3d at 1110.

Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Petitioner fails to rebut the presumed correctness of the factual findings by clear and convincing evidence. No grounds for habeas

relief are shown, and respondent is entitled to summary judgment on this issue of ineffective assistance of counsel.

C.   Failure to subpoena favorable defense witnesses

Petitioner presents no factual or legal allegations in support of this habeas ground. Because this claim was not raised in state court, the Court is not aided by petitioner's state habeas application. Petitioner neither identifies any uncalled favorable witness nor shows what favorable testimony such witness would have presented. Petitioner's conclusory allegation is unsupported by the record and fails to raise a genuine issue of material fact precluding summary judgment. *See Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value."); *see also Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

Complaints of uncalled witnesses are not favored in federal habeas review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what an omitted witness would have stated are largely speculative. *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983). To prevail on such a claim, a petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). The petitioner must also show prejudice; that is, he must demonstrate

16

a reasonable probability that the uncalled witness's testimony would have made a difference in the outcome of the trial. *Id.* at 603. Petitioner does not meet, or even attempt to meet, these requirements.

Further, petitioner fails to overcome the "strong presumption of truth" afforded his judicial declarations made in open court that he was "totally satisfied with the representation provided by my counsel and I received effective and competent representation." *See Cervantes*, 132 F.3d at 1110.

Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Petitioner fails to rebut the presumed correctness of the factual findings by clear and convincing evidence. No grounds for habeas relief are shown, and respondent is entitled to summary judgment on this issue of ineffective assistance of counsel.

## IV. INVOLUNTARY GUILTY PLEA

Petitioner claims that the retaliation charges against him were fabricated, and that because trial counsel failed to subpoena witnesses for a defense, he was forced to plead guilty to the retaliation offense when actually innocent. As petitioner identifies no such favorable defense witness by name or proposed trial testimony, his claim of omitted witnesses as it relates to his guilty plea is conclusory and not demonstrated in the record.

17

Specifically, petitioner asserts that the informant, Charles Long, and his wife, Mattie Long, fabricated their claim that petitioner threatened them in retaliation for their cooperation with the police in petitioner's drug delivery charges. Petitioner states that, but for counsel's failure to investigate and controvert their testimony, he would not have pleaded guilty and would have gone to trial.

In his state habeas affidavit, trial counsel testified in relevant part as follows:

'Did he [the lawyer] investigate the facts and circumstances of the retaliation case? If so, what evidence did he find to exist that would support the State's charge?'

Yes. I examined the written statement of the snitch's wife who claimed that Applicant had gone to her place of employment and let her know that her husband would be at some risk (I don't recall the exact threat) if he came to court and testified against Applicant. I interviewed Applicant about the claim. He denied making the threat. There was no other witness to the conversation made known to me [by] either the statement or by Applicant. It appeared to be a straightforward swearing match.

'Was he [the lawyer] aware of witnesses who could have challenged the State's case for the retaliation charge? If so, why did counsel elect not to subpoena them to testify on Applicant's behalf?'

No, my client neglected to tell me of any such witness. But even if he had, that sort of witness would be rather like an alibi witness – useless. A witness could only have testified that on some occasion he (the witness) was at the store with Applicant and heard no such threat. Even if such a witness existed, his testimony would have been of use only if he could testify that he (the witness) had been at the store and privy to *all* conversations between Applicant and the snitch's wife on *every* occasion that Applicant had been in the store, at least for a period of months around the time of the alleged threat. The other reason that I did not subpoena this (?) witness is that, even if there had been such a witness, Applicant elected to plead guilty in exchange for the prosecutor's offer.

*Buentello*, pp. 30-31 (original emphasis and parenthetical question mark).   In denying

habeas relief, the trial court made the following relevant findings:

> 22.   Based on the court's files, Applicant stipulated to his guilt in the retaliation case.
>
> 23.   Based on Mr. Rennenberg's credible affidavit, trial counsel examined the written statement of the informant's wife setting forth the allegation of a retaliatory threat and 'interviewed Applicant about the claim. He denied making the threat. There was no other witness to the conversation made known to me by either the statement or by Applicant. It appeared to be a straightforward swearing match.'
>
> 24.   Based on Mr. Rennenberg's credible affidavit, 'the other reason trial counsel did not subpoena any controverting witness is that, even if there had been such a witness, Applicant elected to plead guilty in exchange for the prosecutor's offer.'
>
> 25.   Based on the court's files in the retaliation case, Applicant expressly waived any additional 'time provided me by law to prepare for trial' and acknowledged that he was 'totally satisfied with the representation provided by my counsel.'

*Id.*, p. 63.  The Texas Court of Criminal Appeals expressly relied on these findings in

denying habeas relief.

Further, petitioner fails to overcome the "strong presumption of truth" afforded his

judicial declarations made in open court, as follows:

> Defendant further, under oath, in writing and in open court, waives the right against self-incrimination and consents to the Stipulation of Evidence in this case and in so doing, expressly waives the appearance, confrontation and cross-examination of witnesses and consents to the introduction of testimony by oral stipulations, affidavits, written statements and other documentary evidence and hereby judicially confesses and stipulates that:

19

I am the identical person named in the Indictment in the above styled and numbered cause and I have read the same. I have read the above and foregoing admonitions by the Court regarding my rights. I understand the admonitions, and I understand and am aware of the consequences of my plea. Furthermore, my lawyer had explained to me all of the admonitions given by the Court in this document. I hereby agree and confess that all the acts and allegations in said pleading are true and correct.

I stipulate and admit that on or about October 29, 2004 in Montgomery County, Texas, I did then and there intentionally or knowingly harm or threaten to harm Charles Long by an unlawful act, to-wit: threatened to kill Charles Long, in retaliation for or on account of the services or status of Charles Long as witness.

*Id.*, p. 52. Petitioner further testified in open court that:

Joined by my counsel, I state that I understand the foregoing admonishments, statements and waivers and I am aware of the consequences of my plea. I am mentally competent to stand trial and *my plea is freely and voluntarily made*. If my counsel was appointed, I waive and give up any time provided me by law to prepare for trial. I am totally satisfied with the representation provided by my counsel and I received effective and competent representation. Under [state statute], I give up all rights given to me by law, whether of form, substance or procedure.

*Id.*, p. 58 (emphasis added). *See Cervantes*, 132 F.3d at 1110.

The state habeas court denied relief on this issue. Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of federal law or was an unreasonable determination of the facts based on the evidence in the record. Petitioner fails to rebut the presumed correctness of the factual findings by clear and convincing evidence. No grounds for habeas relief are shown, and respondent is entitled to summary judgment on this issue.

## V.  ACTUAL INNOCENCE

Petitioner asserts actual innocence of the retaliation conviction.  In denying relief, the state habeas court expressly found that, "Applicant failed to prove that he is innocent of any of the charged offenses." *Buentello*, p. 64.  In support here, petitioner simply asserts that because counsel failed to subpoena favorable eyewitnesses, he was forced to plead guilty when actually innocent.  Because the Court has already rejected petitioner's claim that counsel failed to subpoena favorable witnesses, the Court construes this aspect of petitioner's claim as raising actual innocence.

Since petitioner has not asserted actual innocence as a "gateway" to obtain review of an otherwise barred claim, *see Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000), the only question is whether a stand-alone claim of actual innocence is cognizable in a federal habeas petition.  In *Herrera v. Collins*, the Supreme Court assumed, for the sake of argument, that "in a capital case a 'truly persuasive demonstration of actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." 506 U.S. 390, 417 (1993).  Whether such stand-alone claims of actual innocence are in fact possible is a question the Supreme Court has, to-date, declined to resolve. *House v. Bell*, 547 U.S. 518, ___, 126 S.Ct. 2064, 2087 (2006).  The Fifth Circuit, however, has not read *Herrera* as allowing such claims. *See Foster v. Quarterman,* 466 F.3d 359, 367-68 (5th Cir. 2006);

*Dowthitt*, 230 F.3d at 741-42. According, petitioner's stand-alone claim of actual innocence fails to raise a cognizable ground for habeas relief.

Even assuming petitioner were raising a "gateway" claim of actual innocence, he presents no probative evidence of his innocence. He further fails to rebut by clear and convincing evidence the presumed correctness of the trial court's finding against his claim. The state habeas court denied relief on this issue. Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of federal law or was an unreasonable determination of the facts based on the evidence in the record. No grounds for habeas relief are shown, and respondent is entitled to summary judgment on petitioner's claim of actual innocence.

## VI.  CONCLUSION

Respondent's motion for summary judgment (Docket Entry No. 9) is **GRANTED**. The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. Any and all pending motions are **DENIED AS MOOT**.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas, on this the 14 day of February, 2008.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

22